THE STATE ex rel. MORRIS, Collector, v. CUNNING-HAM, Appellant.

#### Division One, February 5, 1900.

1. **Taxes**: PRIMA FACIE CASE: DEFENSE TO SUIT. The *prima facie* case for the State in a suit to collect taxes, made by the introduction of the tax bill, may be overcome by showing that it is not based on a valid assessment.

2. ———: ASSESSMENT: BY BOARD OF EQUALIZATION. The county board of equalization has no authority to add property to the list returned by the assessor, unless the assessor (under sec. 7537, R. S. 1889) first gives a written notice to the board that the person named in the list has made a false list with intent to defraud.

State ex rel. v. Cunningham.

3. ――――: ――――: NOTES. The assessor had under statutory classi-fication seventh and, eighth, for notes secured and unsecured, listed *no property as belonging to defendant,* and under the 10th class listed "all other property not above enumerated," at $40. The total valuation of all defendant's property, listed largely as house-hold furniture, was $955. To this list, the county board added $19,045 in *notes,* but made *no entry on its records saying it had so* added such notes to the list, but simply recited that it had increased the assessor's valuation from $955 to $20,000. *Held* that the board of equalization had no authority to add the notes to the assessor's list, either by name or under the disguise of "increased valuation," and the State can not recover on the personal tax bill issued in pursuance to such action.

4. ――――: ――――: FRAUD. The board's action was a fraud on the cit-izen in that its record recited simply an increase in the assessor's valuation of the property, whereas in fact the board's action was an attempted assessment of property which had been omitted from the assessor's list.

5. ――――: ――――: ――――: REMEDY: CERTIORARI. And the record of the board's judgment being a fraud, in that it falsified its action, the citizen's remedy was not by *certiorari* to the circuit court to have the record quashed, but to plead the facts as a defense to a suit on the tax bill.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

REVERSED.

*W. B. McAntire* for appellant.

(1) The power to assess property for state and county taxes is vested solely in the county assessor. Acts 1893, p. 216; R. S. 1889, secs. 7532, 7533, 7534, 7535, 7536, 7537. And his mode of so doing is restricted. R. S. 1889, secs. 7534, 7553, 7564. The board of equalization was powerless to make an assessment, and was restricted to "equalizing" the values only of the property already assessed by the assessor. R. S. 1889, secs. 7517, 7518, 7519, 7520; Cooley on Taxation ( 2 Ed.), pp. 324, 748, 749, 751, 752, 759; Railroad v. Cass Co., 53 Mo. 17; State ex rel. v. Shortridge, 56 Mo. 126; Saline Co. v. Wilson, 61 Mo. 237; Warrensburg ex rel. v. Miller, 77

Mo. 56; City of Kansas v. Railroad, 81 Mo. 285; Valle v. Ziegler, 84 Mo. 214; State ex rel. v. Railroad, 87 Mo. 236; Railroad v. Apperson, 97 Mo. 300; State ex rel. v. Railroad, 114 Mo. 1; State ex rel. v. Spencer, 114 Mo. 574; Blackwell on Tax Titles (2 Ed.), p. 255; Dillon on Mun. Corp. (2 Ed.), p. 610; Cooley on Taxation (2 Ed.), p. 285. (2) The assessor and board of equalization are each prohibited from making any change in the assessment list. R. S. 1889, sec. 7534. (3) The board of equalization is not the county court. State ex rel. v. Vaile, 122 Mo. 42. Neither is it a court of record. R. S. 1889, sec. 3225. (4) Whilst it has been held that acts of boards of equalization were judicial in their nature, yet the same cases never failed to also hold that such boards were inferior tribunals and that acts outside their prescribed duties were void, and subject to collateral attack for fraud or want of jursidiction. State ex rel. v. Vaile, 122 Mo. 34. But the better view is, and the more recent decisions are to the effect, that in regard to the high power of taxation they act not as judicial tribunals but *in invitum*, and any defense thereto may be entered in the suit for taxes in the circuit court. State ex rel. v. Railroad, 135 Mo. 618, in accord with the doctrine enunciated in Howard v. Heck, 88 Mo. 456; Jones v. Driskill, 94 Mo. 190; Boyd v. Ellis, 107 Mo. 394; Smith v. Nelson, 110 Mo. 552; R. S. 1889, secs. 7682, 2050; State ex rel. v. Baker, 129 Mo. 482. (5) Defendant's remedies are cumulative, and not restricted to any particular one. R. S. 1889, sec. 2050; State ex rel. v. Saline Co. Court, 51 Mo. 378; Warrensburg ex rel. v. Miller, 77 Mo. 56. (6) In suits for taxes, all books, papers, records, etc., appertaining to the subject of taxation are admissible in evidence. Ewart v. Davis, 76 Mo. 129; Howard v. Heck, 88 Mo. 456. (7) Statutes for the collection of revenue must be strictly construed. State ex rel. v. St. Louis Co. Court, 13 Mo. App. 53; Saline Co. v. Wilson, 61 Mo. 237; State ex rel. v. Railroad, 87 Mo. 236. (8) Under the evidence in this

State ex rel. v. Cunningham.

case the change in defendant's assessment from $955 to $20,000 was an "invidious" assessment if entitled to the dignity of an assessment at all, and constituted a fraud on defendant. Cooley on Taxation (2 Ed.), p. 218. (9) Where plaintiff stands on his tax bill, and the *prima facie* case made by it is overcome, as in this case, he is bound to produce other evidence or fail. State ex rel. v. Hutchinson, 116 Mo. 399.

*Royse & Walden* for respondent.

(1) Under the provisions of section 7517 et seq. R. S. 1889, the board of equalization has the power to adjust and equalize the list and valuation of all personal and real property assessed in the county and made taxable by the law of the State. (2) And the courts has held their acts in so doing are judicial. Ins. Co. v. Charles, 47 Mo. 465; Railroad v. Maguire, 49 Mo. 483; Black v. McGonigle, 103 Mo. 193; St. Joe Lead Co. v. Simmons, 108 Mo. 226. (3) It is a well recognized rule of evidence that under a plea of *res adjudicata,* parol evidence is not admissible to contradict a judicial record, only in case the record does not show what was adjudicated in the prior action. West v. Moser, 49 Mo. App. 201; Armstrong v. St. Louis, 69 Mo. 310. (4) *Certiorari* is the proper method of correcting an erroneous assessment, as no appeal lies from the action of the board of equalization. State v. Downling, 50 Mo. 134; State ex rel. v. St. Louis Co. Court, 47 Mo. 594; Railroad v. Board of Equalization, 64 Mo. 294. (5) *Certiorari* is the proper method to annul an increased tax assessment, if made without jurisdiction. State ex rel. v. Springer, 134 Mo. 212; Ward v. Board of Equalization, 135 Mo. 309. (6) The courts, either of common law or equity, are powerless to give relief against the judgments of assessing bodies except as they may be specially empowered by law to do so, and this principle is applicable to statutory boards of equali-

zation, which are only assessing boards with certain appellate powers, but whose actions, if they keep within their jurisdiction, is conclusive except as otherwise provided by law. Cooley on Taxation (Jud. Ed.), 748, 749, 760.   (7)   No one should be at liberty to plant himself on the misfeasance or nonfeasances of officers under the revenue law, which in no way concerns himself, and make them an excuse for a failure on his own part to perform his own duty, and the rule seems to be well established by late cases, that provisions of the revenue law intended to secure order, system and dispatch, and by a disregard of which the parties can not be injuriously affected are not regarded as mandatory unless accompanied by negative words, importing that the act required shall not be done in any other manner or time than as designated.   State ex rel. v. Bank of Neosho, 120 Mo. 161; Sec. 7708, R. S. 1889.

VALLIANT, J.—This is a suit on a personal tax bill against the defendant.    The petition is in the usual form.

The answer, among other defenses, pleads that the defendant's personal property was regularly assessed at $955 and the assessment duly returned by the county assessor, but that the board of equalization of Jasper county with intent to perpetrate a fraud on defendant added to the list of property given in by him and returned by the assessor certain other property, to wit, notes held by defendant's bank, and thereby swelled the assessment from $955 to $20,000, and in order to conceal their real act falsified their record so as not to show their addition of other property, but to make it appear as an increase in the valuation of the property returned by the assessor.    That no record was ever kept of the assessment as made by the board of equalization, that the board's acts in this respect were unlawful and oppressive in that it made no such assessment of such notes held by the other banks of the county, although there were other such banks holding such notes of much larger amounts than those held by defendant.

The reply denied the allegations of the petition and averred that the board of equalization increased the defendant's assessment as it had a right to do and gave him notice thereof and in conformity to the notice he appeared before the board of equalization and the board of appeals and made a showing to have the assessment reduced, which was refused, and he took no further steps to correct the proceedings of. the boards, and the action was therefore *res adjudicata* and could not be examined into in this suit; and whether or not the assessments were uniform and equal with other assessments is also a matter which can not be now looked into.

Upon the trial the plaintiff introduced in evidence the tax bill and rested. The defendant introduced his original assessment list as given in by him and returned by the assessor, which was made out on the printed form used for that purpose, in which the various kinds of personal property are divided into classes as required in section 7531, R. S. 1889, as amended by Act March 28, 1893, from second to tenth inclusive. Under this classification the list showed in class 2d, horses, cattle and hogs aggregating in value $95; in class 3d, farm implements, etc., $10; in class 4th, clocks, watches, sewing machines, household furniture, etc., aggregating in value $810; and in class 10th "all other property not above enumerated" $40, making a total assessment of $955.

The statutory classification which this list followed makes especial call for solvent notes and devotes two classes to them alone, class seventh being solvent notes unsecured by mortgage, and class eighth being solvent notes secured by mortgage. On the list returned by the assessor both these classes were left blank, and on the assessment made by the board of equalization they are also left blank.

Defendant also offered in evidence the page of the book kept by the board of equalization showing the assessment of the defendant as follows:

| | |
|---|---:|
| Horses, number, 2, value, dollars............$ | 70.00 |
| Asses and Jennets ....... ...... ........... .. | |
| Mules ...... .. ... ..... .... .... ......... | |
| Neat cattle, number, 1, value, dollars........... | 15.00 |
| Sheep .. ..... ........... ...............'.. | |
| Hogs, number, 2, value, dollars..... ..... .... | 10.00 |
| All other live stock......................... | |
| Brokers and exchange dealers................ | |
| Corporate companies ...... .. ..... ....... .. | |
| Money, notes, bonds and other credits, class 5, 6, 7, 8, 9.......................... | |
| All other personal property, class 3, 4, 10...... | 860.00 |
| Total valuation by assessor.................. | 955.00 |
| Total valuation as adjusted by county board of equalization.... ...... .... ...... .... | 20,000.00 |
| Total value as adjusted by state board of equalization.... ...... ...... ...... | |
| School tax, cents per $100................... | 250.00 |
| State tax, cents per $100................. ,.. | 50.00 |
| County rev. tax, cents per $100............... | 100.00 |
| Courthouse, cents per $100.....·............ | 40.00 |
| Total tax....................... | 440.00 |

And also the following page of a book of the board of equalization:

State ex rel. v. Cunningham.

JASPER COUNTY BOARD OF EQUALIZATION, 8TH DAY OF APRIL, 1895.

| TO WHOM ASSESSED. | DESCRIPTION OF REAL AND PERSONAL PROPERTY. | PARTS OF SECTIONS. | Acres. | 100ths. | Sec. Lot. | Tp. Blk. | Range. | INCREASED. | | DECREASED. | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | FROM DOLLARS. | TO DOLLARS. | FROM DOLLARS. | TO DOLLARS. |
| Cunningham, T. W.... | | | | | | | | 955 | 20,000 | | |

The clerk of the county court who was clerk of the board of equalization testified that those two pages contained all the record that was kept of that board's acts in this matter.    The clerk also testified that after the board made the change in the assessment he gave notice to defendant thereof and defendant appeared before the board of appeals and tried to get them to reduce it, but that board asked him some questions to which he answered in effect that in his banking business he took notes in his own name and had on hand of that kind of property about $48,000 on June 2, 1894, whereupon the board refused his request.   The evidence also showed a separate return for the assessment of defendant's bank, of its capital stock $5,000 assessed at 60 per cent, and its money deposited in bank $3,000.   The testimony for defendant also showed that the increase in his assessment made by the board of equalization was not in the valuation of the property in the list given by him to the assessor and by the assessor returned to the board, but was the result of adding to  the assessment list so returned property not on it, that is, notes as above mentioned to the amount of $19,045; and also that defendant's bank was the only one in the county whose notes of this kind were so assessed, although there were seventeen other banks in the county each of which had more of such notes than that of the defendant, and the president of one of which was a member of the board of equalization.   All this evidence went in against the plaintiff's objection and upon the final determination of the case the court concluded that it was incompetent and excluded it.

There was no evidence in rebuttal.

At the request of the plaintiff the court declared in the nature of an instruction to the effect that in this matter the board of equalization and board of appeals acted within their jurisdictions and it was *res adjudicata*; that defendant could not in this suit contradict the record by oral testimony showing that the increase of the assessment was made by adding other

property than that returned by the assessor, nor that it was unequal because the other banks were not so assessed.    And the court refused the defendant's request to declare that the board of equalization had no authority to change the list returned by the assessor by adding to it other property, and that if it in fact took into account other property not on the list, and in order to conceal the fact carried it into the assessment under the head of "other personal property" instead of placing it in the class where it belonged the finding should be for defendant.

These two instructions, the one given and the one refused, sufficiently show the theory on which the case was tried; there were two instructions given at request of defendant which, in the view we take, it will be unnecessary to quote.    The finding and judgment were for the plaintiff and defendant appeals.

The assessment of property for the purpose of taxation is regulated by the statute; the method is prescribed by the legislature with due regard to the necessity of the State and the rights of the citizen, and is designed to be as plain and easily understood as it is practicable to write the law.    In a suit to collect the tax the law makes the tax bill *prima facie* evidence of its validity, but it is not conclusively so.    The defendant may show if he can that it is not based on a valid assessment and that showing will defeat the suit.

Under our law assessments are to be made in the first place under the supervision and direction of the county assessor.    For this purpose blanks are furnished him at the expense of the county upon which all taxable property and rights are divided into ten classes with specifications under each head, so that any one of ordinary intelligence who desires to make an honest list of his property can scarcely make a mistake.

It is the duty of the assessor to require each person in his county to make out his list of taxable property on one of those blanks and swear to its correctness.    The jurat is printed on

the blank and that too is so specific that it is almost impossible to misunderstand it. If the property owner can not be reached or if he omit to make out the list and deliver it under oath to the assessor, the latter is then required by law to make a list and assessment. And "wherever there shall be any taxable property in any county, and from any cause no list thereof shall be given to the assessor in proper time and manner, the assessor shall himself make out the list, on his own view, or on the best information he can obtain." If a person after notice fails to deliver a list as required, or omits property that should be included in the list, the assessor is required under a heavy penalty to assess the omitted property double its value; and if the owner with intent to defraud gives the assessor a false list he is liable, on conviction before the board of equalization, to have all his property assessed and to pay treble taxes thereon, and in addition be indicted and punished for perjury. [Secs. 7531-7537 and amendments.] These are substantially the only provisions in our statute relating to assessments of the kind we are now considering and they contain the only authority for making such assessments. By these we see that the law first appeals to the conscience of the property owner to furnish an honest list and valuation of his property, then it imposes a severe penalty on him if he fails to do so, and authorizes and requires the assessor under a penalty to make the assessment under the best information he can obtain. If these provisions of the statute are not sufficient to accomplish their purpose it is for the legislature and not for the courts to authorize some other method of obtaining a correct list of the taxable property in the county.

The board of equalization have nothing to do with making a list of the property or adding property to the list returned, except in the proceeding contemplated in section 7537 when the assessor gives a written notice to the board that a person has made a false list with intent to defraud. The

ordinary duties of the board of equalization pertain only to equalizing the values of property on the lists returned by the assessor. [Pacific Railroad v. Cass. Co., 53 Mo. loc. cit. 30.] "Equalization of assessments has, for its general purpose, to bring the assessments of different parts of a taxing district to the same relative standard, so that no one of the parts may be compelled to pay a disproportionate part of the tax." [Cooley on Taxation (2 Ed.), p. 421.] The law writer was there speaking of the duties of a state board of equalization, but the definition is applicable in principle here.

Sections 7518-7520 are the statutes creating the board of equalization and prescribing their duties, from which it appears that their sole power is to equalize valuations and assessments and hear appeals from the judgments of the assessor.

This is what the learned counsel for the respondent contend was done. In their brief they say: "And it being their (the board's) opinion that the personal property of the defendant had been returned below its real value they raised the valuation," etc. And the record that the board made showed it so. According to that record the only change the board made was to raise the valuation of the property contained in the list from $955, the assessor's total valuation, to $20,000, the board's valuation. And the learned counsel say that that is *res adjudicata*, that the only remedy the defendant had was by *certiorari*, and not having taken that course he must submit.

The law requires that an accurate record of the proceedings and orders of the board be kept, and if that had been done in this instance the record would have shown that, instead of raising the assessment of value of the property in the list returned by the assessor, the board added other property to the list and thereby produced the increase. Then it would have appeared on the face of the record that the board had exceeded its jurisdiction and the defendant could have taken the case by

*certiorari* to the circuit court and have had the record quashed. But the evidence showed that although the board did in fact effect the increase by adding other property to that contained in the assessor's list, yet the record was so falsified as to conceal the fact and to indicate that it was a mere increase of valuation. *Certiorari* would bring no relief to a party injured by such a transaction, because the record would be fair on its face and nothing else could be looked into. [Ward v. Board of Equalization, 135 Mo. 309.]

It is contended on behalf of respondent that the decisions of the board of equalization and board of appeals are judicial in their character, that the subject involved is *res adjudicata*, and since no appeal is given, the decisions are final. That such proceedings do partake somewhat of a judicial character is true, and for the purposes of this case the respondent's full contention on that point might be conceded, still if the board falsifies its record its judgment is liable to attack on the ground of fraud, and that is just what the defendant has done by his plea and his proof in this case.

The board doubtless acted under a sense of public duty, the notes referred to in the evidence were clearly subject to taxation and should have been included in the list given by appellant to the assessor, yet because he had failed to do his duty it was none the less in contemplation of law a fraud on his rights for the board to willfully deprive him of a true record of their proceedings. Under such circumstances the appellant has the privilege under our code of civil procedure to plead facts entitling him to equitable relief the same as if he had taken the initiative in a court of equity to set aside the false record on the ground of fraud.

Of this privilege the appellant availed himself in his answer, and his proof clearly supported his allegations; this constituted a complete defense to the suit and the finding and final judgment should have been for the defendant on his equitable defense.

`Appellant advances other points in his brief which as the case is disposed of under the points above discussed, it will be unnecessary to consider.

The judgment of the circuit court is reversed. All concur.