THE STATE ex rel. CARLETON DRY GOODS COM-
PANY, RICE-STIX DR¯ GOODS COMPANY,
HARGADINE-McKITTRICK    DRY    GOODS
COMPANY, and ELY & WALKER DRY GOODS
COMPANY, v. LOUIS ALT, License Collector.

In Banc, December 21, 1909.

1. **MANDAMUS: Question of Taxation.**  The grant of power to
the Supreme Court to hear and determine writs of *mandamus*
is without qualification.  Its practice is to decline to issue
such writs unless the case is one of more than ordinary im-
portance; but this is a rule of expediency, and does not affect
the court's jurisdiction.  And where the case involves a large
amount of state and school revenue, and turns upon the right
of a city tax collector to exact a large amount of taxes and to
withhold from large wholesale merchants a right to do business
in the State until those taxes are paid, a determination of the
question is not only of importance to the merchants and the
collector, but vitally affects the public, and the writ will issue
and be heard.

2. **TAXATION OF MERCHANTS: License: Property Tax.**  The
taxation of merchants and manufacturers, though nominally
and in form a license tax, is, in fact, a property tax, and not
merely an occupation or license tax.

3. **————: Statements: Revised by City Board: Ad Valorem
Tax.**  The merchants' statements furnish a basis alike for state,
school and municipal taxation.  The Board of License Revision,
created by ordinance of the city of St. Louis, has no power to
revise merchants' statements made in pursuance to the general
laws of the State as a basis for the levy of *ad valorem* and
license taxes, or to increase the valuation placed by them upon
goods in their possession between the first Mondays of March
and June, nor can the License Collector of said city require the
taxes for state, city and school purposes, based upon said in-
creased valuation, to be paid, as a precedent condition to the
issuance to them of a license to do business as merchants in
said city.

4. **————: Equalization of Statements: Casus Omissus in Act
of 1895: Remedy.** Prior to the Act of March 2, 1895, Laws 1895,
p. 223, there was no provision in the statutes for revising and in-
creasing the estimate of values placed by merchants and manu-

facturers upon their stocks of goods. That act gave to boards of equalization power to equalize the valuations as placed thereon by merchants, and even to increase them, but by section 9130, Revised Statutes 1899, the city of St. Louis was excepted from the operation of the act, but by virtue of its special charter that power was vested in a city board of equalization, but the Legislature overlooked the provision in the charter which required the city board to meet on the third Monday of March and to remain in session not longer than four weeks, whereas the general law required boards of equalization in counties to meet on the first Monday in September for the purpose of equalizing the valuations of merchants' statements. There was no reason why the General Assembly, by an appropriate provision in the Act of 1895, could not have required merchants' statements to be equalized by the board of equalization of St. Louis and the board to meet in September for that purpose, but it did not do so, and the omission is a clear case of *casus omissus*, which the courts have no power to remedy.

5. ————: ————: **Board of License Revision.** The Board of License Revision of St. Louis has no power to equalize the valuations of statements placed upon their stocks of goods by merchants. That board was not given such power by the ordinance creating it. It was given only the power to review, adjust and correct the lists of persons who are liable to pay license or occupation taxes.

6. ————: **Must Be Specifically Authorized.** It is axiomatic that the authority to tax a citizen must be found in the written laws, and not be made to depend on a matter of inference or implication. If the General Assembly, in providing by a general act for the equalization of valuations placed upon their stocks of goods by merchants, omitted to include St. Louis within the operation of the laws, the tax due to an increase in those valuations made without authority by the Board of License Revision is invalid and cannot be collected.

## Mandamus.

Peremptory writs awarded.

*Judson & Green* and *Nagel & Kirby* for relators.

(1) The taxation of merchants and manufacturers in Missouri though in form license taxation is in fact property taxation in the form of a license. State v.

McKinney, 48 Mo. 373; Cape Girardeau v. Reilly, 72 Mo. 220; State ex rel. v. Tracey, 94 Mo. 217; Aurora v. McGannon, 138 Mo. 38; State ex rel. v. Ashbrook, 154 Mo. 375. The distinction between the two is fundamental, as in license taxation proper the license is fixed by law, there is no assessment as such and no occasion for a hearing. No duty is required but the making up of the license lists and the collection of the license; while in property taxation, there must be a valuation, either by the holder or by some authority definitely appointed by law. County of Santa Clara v. Railroad, 18 Fed. 409; Hagar v. Reclamation Dist., 111 U. S. 701. (2) It appears from the return that there was no express authority either in the statute or ordinance for the revaluation of the merchants' statements by the so-called Board of License Revision. This is fatal to respondent's case, as such authority must be given expressly by statute and cannot be based upon inference of intendment. State ex rel. v. Shotridge, 56 Mo. 126; Valley v. Zeigler, 84 Mo. 214; State v. Railroad, 77 Mo. 202; Warrensburg v. Miller, 77 Mo. 56; State v. Railroad, 87 Mo. 236; State ex rel. v. Hagar, 91 Mo. 452; Railroad v. Apperson, 97 Mo. 300; Kansas City v. Building and Loan Ass'n, 145 Mo. 50; St. Louis v. Weneker, 145 Mo. 238; State v. Railroad, 149 Mo. 645; State v. Benedict, 11 Vt. 240; Leach v. Blakeley, 34 Vt.; Wiley v. Flurnoy, 30 Ark. 609; White v. City of Apperson, 22 Wis. 639; Mattheson v. Town of Mazomanie, 20 Wis. 195; Ketchum v. Town of Mukwa, 24 Wis. 303; McLean v. Jepfson, 123 N. Y. 142; Coontz v. Simpson, 118 Ind. 1; Stewart v. Palmer, 174 N. Y. 188; Ulman v. Baltimore, 74 Md. 507; State, etc., Commrs. v. Holliday, 105 Ind. 216; Flory v. Sherwood, 128 Ind. 495; Oregon, etc., Co. v. Wasco County, 2 Ore. 206; 1 Cooley on Taxation (3 Ed.), p. 616. (3) It is conclusively shown by a comparison of the provisions of the charter of St. Louis, creating the Board of Equalization for the correction

of errors and assessments and the equalization of values of assessed property, with the language of the ordinance creating the Board of License Revision, that the authority to change the valuations of property, and to equalize the same, was intentionally withheld from the latter and that its duties were confined to the correction or revision of the license lists in license taxation. Charter St. Louis, art. 5, sec. 24; Ordinance, sec. 2112, p. 19. (4) Another fundamental distinction between license taxation and property taxation is that in the former there is no necessity for notice of the charge to the taxpayer, as the amount of the tax to be paid is fixed by law, while in taxation of property by valuation notice and opportunity to be heard must be provided for in the law, if the valuation given by the taxpayer is to be changed by any official or board. The ordinance in question makes no provision for notice, for the reason that no notice is required, as it deals wholly with license taxation, as distinguished from property taxation. Stewart v. Palmer, 74 N. Y. 188; Patton v. Green, 13 Calif. 325; Philadelphia v. Miller, 49 Pa. St. 440; Cooley on Const. Lim. 355; Hagar v. Reclamation Dist., 111 U. S. 701; Railroad v. Wright, 207 U. S. 127; Heth v. Radford, 96 Va. 272; Coontz v. Simpson, 117 Ind. 1. Hence it was that notice was provided in the charter and none is provided in the ordinance. Charter, art. 5, sec. 24. (5) Prior to the Act of March 2, 1895 (See Acts 1895, p. 223), there was no revision, provided by the laws of Missouri, of the values placed by merchants and manufacturers upon their stocks of goods. The valuations made by merchants were final, subject only to the penalties of bond forfeiture and prosecution for false swearing. This Act of 1895, extending the power of the county boards of equalization to the equalization of the valuation of merchants' statements with the other property of the county, was expressly limited to the counties of the State, and the county boards of equalization referred

to therein existed only in the counties outside of the city of St. Louis; the city of St. Louis being expressly excluded from the statute providing for the county boards of equalization. See Sec. 9130, R. S. 1899. The equalization system of the city of St. Louis provided by charter did not include the equalization of the values of merchants' statements. R. S. 1889, secs. 6899 to 6922; Laws 1895, p. 223; R. S. 1879, secs. 6318 to 6341; 2 Wagner's Stats., par. 938; chap. 95, sec. 6; Gen. Stats. 1865, p. 408, ch. 93, sec. 6; R. S. 1899, sec. 9130; R. S. 1889, sec. 7517; Charter of St. Louis, art. 5, sec. 24, Woerner's Rev. Code, p. 374; Charter of St. Louis, art. 3, sec. 26, clause 5, Woerner's Code, p. 329; Ordinances of St. Louis, sec. 2099, Woerner's Code, p. 1012. (6) As the duty of the City License Collector, under the law, in the issuance of merchants' licenses is clearly ministerial, and it is admitted that the merchants' statements or returns were in due form, properly verified, and the tax payable thereunder was lawfully tendered, the remedy by mandamus is properly invoked in this case. State ex rel. v. Ashbrook, 154 Mo. 375; State ex rel. v. Oliver, 116 Mo. 194.

*Lambert E. Walther* and *Benjamin H. Charles* for respondent.

(1) The duty of collecting state revenue and performing all other functions in relation to the state in the same manner as if it were a county is imposed upon the city of St. Louis. Constitution, art. 9, sec. 23; Scheme of Separation, sec. 34; R. S. 1899, secs. 9334 and 9335; Chap. 149, R. S. 1899. (2) The city of St. Louis has power to assess, levy and collect taxes and to license, tax and regulate occupations. Charter, art. 3, sec. 26, clauses 1 and 5; art. 5, sec. 1. (3) And has power to define the duties of all city officers, and may change, increase or diminish their duties, and may transfer and distribute the powers and duties, in whole or in part, of any office provided for in the charter, to

another or others.  Charter, art. 4, sec. 28; art. 3, sec. 32; art. 4, sec. 45.  (4)  The provisions of Sec. 8546, R. S. 1899, relating to the correction and equalization of merchants' returns for *ad valorem* taxes, apply to St. Louis.  (a)  The law is general in its character, R. S. 1899, sec. 4160.  (b)  The merchants' *ad valorem* tax is a property tax.  Aurora v. McGannon, 138 Mo. 38; State ex rel. v. Tracy, 94 Mo. 217.  (c)  And all property must be uniformly taxed and in proportion to its value.  State Constitution, art. 10, secs. 3 and 4. (d)  To except St. Louis from these provisions of the statute would result in the act becoming violative of art. 10, sec. 3, and art. 5, sec. 53, of the Constitution. Henderson v. Koenig, 168 Mo. 356; State v. Hill, 147 Mo. 63.  (e)  Where the language is open to two constructions, one of which will render the act valid, and the other invalid, the former will be accepted.  17 Am. and Eng. Ency. Law, p. 17.  (f)  The consequences of a proposed interpretation may be properly considered to ascertain the legislative intent.  State ex rel. v. Rombauer, 104 Mo. 619; Kane v. Railroad, 112 Mo. 34.  (g) And likewise, the history of the legislation.  Dowdy v. Wamble, 110 Mo. 280; Gabriel v. Mullen, 111 Mo. 119; Greely v. Railroad, 123 Mo. 157.  (5)  If the said provisions of Sec. 8546, R. S. 1899, have no application to the returns of St. Louis merchants, then the duty of devising a method for correcting and equalizing such returns, in accord with the legislative policy as evidenced by the statute, devolved upon the city.  The power to perform such duty is expressly given by the constitutional, statutory and charter provisions cited under points 1 and 2, and particularly by Secs. 9397-8, R. S.  1899, and article 3, section .26, clause 5, of the charter, conferring the power "to license, tax and regulate" merchants.  (a)  The power to regulate anything means to fix the terms upon which it may be used.  Hill v. St. Louis, 159 Mo. 159; St. Louis v. Tel. Co., 149 U. S. 469; Gibbon v. Ogden, 9 Wheat. 1:

Sluder v. Transit Co., 189 Mo. 107.   (b)  The city, in taxing and regulating merchants, has the right to provide for the investigation and correction of the statements required to be filed by them.   (c)  And the statements or returns thus corrected must be the basis for the state and school taxes, as well as the municipal tax, because the valuation for the last named cannot be greater than the valuation for the tax for state purposes.  Constitution, art. 10, sec. 11.   (6)  The city has, by ordinance, created a Board of License Revision, and empowered it to review, adjust and correct returns made by merchants, and the amount of *ad valorem* tax required to be paid by relators must be based upon their returns as corrected by this board. (7)  The power to adjust and correct the returns is clearly conferred upon the board by the terms of the ordinance.   (8)  The power to ''adjust and correct'' authorizes the increasing of the returns when found incorrect.   Washington Co. v. Railroad, 58 Mo. 372.

GANTT, J.—These are original proceedings in mandamus to compel the respondent, License Collector of the city of St. Louis, to issue to the relators merchants' licenses.  The cases all involve the same questions, and the pleadings are identical, except as to the amount of taxes and the dates.

In substance the petitions alleged that relators are merchants engaged in business in the city of St. Louis and the respondent is License Collector of said city, and is charged under the law with the duty of issuing licenses to merchants in the city of St. Louis and of collecting taxes levied by the State, the Board of Education, and the said city, on such licenses; that on or about the first day of June, 1909, the respondent under the ordinances of the city of St. Louis, called upon each of said relators to furnish the statement of the value of the largest amount of goods, wares, and merchandise which it had in its possession or under

its control at any time between the first Monday of March and the first Monday of June, 1909, and a statement of the aggregate amount of sales made by it during the year next preceding the first Monday of June, 1909; that in addition to the State tax and the tax for the support of the public schools in said city, there was also levied for city purposes an *ad valorem* tax of one-fifth of one per cent on the valuation of such goods, wares and merchandise situated in the city of St. Louis; that relators thereupon each prepared and filed a statement of said largest amount of goods, wares and merchandise which it had under its control and its possession between the dates aforesaid and the total amount of sales made during the year next preceding the first Monday of June, 1909, said amounts so returned by relators being respectively as follows: "Carleton Dry Goods Company, valuation $766,788.00, total sales $7,365,012.00; Rice-Stix Dry Goods Company, $1,021,314.00, total sales $11,781,630.00; Hargadine-McKittrick Dry Goods Company, valuation $679,-749.95, total sales $7,514,698.00; Ely & Walker Dry Goods Company, valuation $1,133,845.00, total sales $10,676,080.00.''

That the said amounts were duly sworn to and signed and delivered to the respondent. That upon the said valuation of the stock there was levied under the law, a state *ad valorem* tax of seventeen cents on the dollar for state purposes, an *ad valorem* tax of sixty cents for school purposes and twenty cents *ad valorem* for municipal purposes, making a total of ninety-seven cents, which amount of taxes the license collector is chargeable by law with the duty of collecting; that the said taxes for state, school and city purposes, upon the said valuation, and the tax of one dollar per thousand upon the aggregate sales levied under ordinances of the said city for city purposes, amounted, upon the returns so made by said relators, as follows: "Carleton Dry Goods Company, on stock

$7,437.84, on sales $7,356.01; or a total of $14,802.85; Rice-Stix Dry Goods Company, on stock $9,906.75, on sales $11,781. 63, or a total of $21,688.38; Hargadine-McKittrick Dry Goods Company, on stock $7,292.48, on sales $7,514.70, or a total of $14,807.18; Ely & Walker Dry Goods Company, on stock $10,998.29, on sales $10,676.08, or a total of $21,674.37.'' That under the statutes of the state and the ordinances of the city, it was made the duty of the license collector on the payment of the said amounts to issue to relators respectively, licenses in due form of law as prescribed in the statutes and ordinances authorizing relators to sell goods, wares and merchandise in one store, stand or place of business in the city of St. Louis for the year following the first Monday of July, 1909; that each relator, on the first Monday of July, 1909, tendered to the said respondent the said several amounts so due upon their said returns as aforesaid and that respondent refused to accept the same, and still refuses so to do. That relators then demanded, upon such tender of payment, the issuance to each respectively of a license as in such cases made and provided. That said respondent refused and still refuses to issue the said licenses, and threatens to prosecute relators for doing business without a license in the city of St. Louis.

The petitions conclude with an allegation that relators have no adequate remedy at law, and that they are still ready and offer to pay said sums so payable on their respective statements, and pray the issuance of a writ of mandamus commanding and compelling respondent, on the payment of said sums, to issue to relators merchants' licenses in due form of law.

The returns of respondent admit the allegations of the petitions of relators as to their business, the office of respondent, that on or about the first day of June, 1909, he called upon relators to furnish statements of the character described in the petition; that relators did file with him statements showing the re-

spective amounts alleged; that respondent refused to accept the same and relators then severally demanded the issuance of licenses to them respectively, which demands were refused. The other allegations of the petitions were denied generally. The returns then set up affirmatively the various provisions of the charter of the city of St. Louis, and of the scheme of separation of said city from the county of St. Louis, whereby the city, through the Mayor and Municipal Assembly, is empowered to assess, levy and collect all taxes, for general and special purposes, on real and personal property and licenses, to license, tax and regulate various occupations, including merchants, and to enact all ordinances necessary to carry into execution the laws relating to state, county, city and other revenue within the city of St. Louis. There are likewise set forth in the returns various provisions of said charter authorizing the Municipal Assembly, by ordinance, to define the duties of all city officers, to create new offices and to transfer and distribute the powers and duties, in whole or in part, of any office provided for in the charter, to another or others. That by statute it is provided that the council shall, in all things appertaining to the assessing and collecting of the state revenue and licenses within the limits of said city, perform and do all things which, before the separation by the city and county, devolved on the county court of St. Louis county, unless otherwise provided in the Scheme and Charter of the city, and that whenever the county of St. Louis or the county court of St. Louis county is mentioned in the chapter of the statutes relating to the assessment and collection of the revenue, it shall be taken and understood as applying to the city of St. Louis.

The returns further allege that, pursuant to the charter powers and statutes referred to, the city of St. Louis enacted certain ordinances relating to the licensing of merchants, which ordinances are now and

have been in force for a great many years. The procedure for the issuance of the city licenses and the assessment and collection of the *ad valorem* tax upon the stock in trade for municipal purposes is substantially the same as is provided by the statute in regard to the state license and tax. There are some differences as to the time of payment, the enforcement of the bonds and some other perhaps unimportant details. The returns then allege that the duty of collecting the merchants' *ad valorem* tax for state, school and municipal purposes was performed by the Collector of the Revenue of the city of St. Louis until the Municipal Assembly, by ordinance duly enacted, created the office of License Commissioner and transferred to such office the said duty. That by section seven of said ordinance, which was approved March 15, 1897, there was established a Board of License Revision. The authority of the city to create this board, and the powers of the board, are the questions presented in this case for determination. The respondent sets forth in full the ordinance establishing the Board of License Revision of March 15, 1897. The return then alleges that the License Commissioner, whose office was created by ordinance, collected the merchants' *ad valorem* tax and license fees from that time until his duties were, by the act of the General Assembly of Missouri, transferred to a License Collector, whose office was created by said act, and the said duty is now performed by this respondent as such license collector. That by section 8546, Revised Statutes 1899, it is provided that county boards of equalization shall meet on the first Monday of September of each year for the purpose of equalizing the valuation of the statements filed by merchants for the *ad valorem* tax and that said boards shall have the same powers and preside in the same manner as provided by article 1 of chapter 149, Revised Statutes 1899, for equalization for real and personal property so far as consistent with

the provisions of said chapter. That ever since the creation of the Board of License Revision by ordinance as aforesaid, the power and duty of correcting and revising merchants' statements for the *ad valorem* tax and license tax have been legally vested in said board, and that the valuations as equalized by said board constitute the legal assessment for such merchants' *ad valorem* tax for state, school and municipal purposes. That the council of the city of St. Louis, on May 14, 1909, appointed three discreet and experienced real estate owners, having the other qualifications required by the ordinance, to constitute such board. That after qualifying and choosing a chairman, the said board held daily sessions from June 15th to July 13th, 1909. That the relators respectively filed with respondent statements purporting to give the correct value of the greatest amount of all goods, wares and merchandise between the first Monday in March and the first Monday in June, 1909, and the aggregate amount of all sales made during the year preceding the first Monday of June, 1909. That upon investigation and examination into said statements and the largest amount of goods, wares and merchandise which the said relators respectively had in their possession or under their control, and upon an examination of the books of account of relators, the said Board of License Revision found the said returns so made to be incorrect. That the board notified said relators respectively to appear before it at certain dates specified in the returns, and that the relators respectively appeared before the board upon the said dates, but refused to correct their statements, and thereupon the board did revise, adjust and correct said statements and raise the amounts thereof as follows: "Carleton Dry Goods Company, to $1,150,182.00; Rice-Stix Dry Goods Company, to $1,531,971.00; Hargadine-McKittrick Dry Goods Company, to $994,432.00; Ely and Walker Dry Goods Company, to $1,700,768.25;" which amount said

board, upon investigation and hearing, found and de-
termined to be the correct values of the largest amount
of goods, wares and merchandise which relators re-
spectively had in their possession and under their con-
trol at any time between the first Monday of March
and the first Monday of June, 1909. That the returns
as to the aggregate amount of sales during the year
preceding June 1, 1909, were by the board found to be
correct, except in the case of Ely & Walker Dry Goods
Company, whose statement as to such sales was, on
examination of the relator's books of account and on
investigation and examination of the said statement,
found to be incorrect. And that the correct amount
of said relator's sales was $10,785,939.67. The amount
of merchants' *ad valorem* tax for state, school and city
purposes, which each of the relators became obliged
to pay, upon the returns as corrected by the License
Board of Revision, are set out in detail in respond-
ent's returns, the total amounts being respectively as
follows: "Carleton Dry Goods Company, $18,523.44;
Rice-Stix Dry Goods Company, $26,642.85; Hargadine-
McKittrick Dry Goods Company, $17,162.05; Ely &
Walker Dry Goods Company, $26,642.85."

The return then concludes that respondent has duly
notified relators and given them statements as required
by law of the amounts of said taxes and license fees
as based upon the assessment made by the said Board
of License Revision as aforesaid, but that relators have
failed and refused and still fail and refuse to pay said
amounts so legally and properly assessed against them
as aforesaid; that respondent is now and always has
been ready and willing to issue merchants' licenses to
relators upon the payment of said taxes and license
fees.

To these returns relators have filed demurrers,
the two grounds of which are: First, that the Board
of License Revision had no power, under the statutes
or the laws of this state, to change or alter the valua-

tion of the stock of goods, wares and merchandise in the possession and under the control of the relators from that given and stated by them in their verified statements as merchants. And, second, because upon the face of the return, the said Board of License Revision had no power under the ordinance of the city of St. Louis to change or alter the valuation of the stock of goods from that stated by the relators in their returns as merchants.

I. A careful attention to the respective allegations of the petitions for mandamus and the returns of the license collector of St. Louis, will show that the one question of law involved in these cases is whether or not the License Board of Revision, created by an ordinance of said city, has the power to revise merchants' statements made in pursuance of the general laws of the State as a basis for the levy of *ad valorem* and license taxes, and to increase the valuation placed thereon by said merchants, and whether the License Collector of St. Louis can require the taxes for state, city and school purposes to be paid upon such increased valuation as a condition precedent to the issuance of license to do business as merchants in said city.

The grant of power to this court to hear and determine writs of mandamus is without qualification. Our practice has been to decline to issue such writs unless the case was one of more than ordinary importance, but, as has been said, this is a rule of expediency and does not affect the jurisdiction of the court. In view of the amount of state and school revenue involved and of the importance alike to the relators and to the collector that their respective rights and obligations should, in a matter vitally affecting the public, be speedily and finally settled, we have thought this a proper case to exercise our jurisdiction.

The taxation of merchants and manufacturers in this state, though nominally and in form a license tax,

is, in fact, as often held by this court, a property tax, and not merely an occupation or license tax, and the merchants' statements furnish a basis alike for state, school and municipal taxation. [State ex rel. v. Kinney, 48 Mo. 374; State ex rel. v. Tracy, 94 Mo. 217; Cape Girardeau v. Riley, 72 Mo. 220; Aurora v. McGannon, 138 Mo. 38; State ex rel. v. Ashbrook, 154 Mo. 375.]

The distinction between an *ad valorem* property tax and a strictly occupation or license tax must be kept in view, to reach a proper settlement of the controversy in these cases. When the State, or a municipality by authority of the State, imposes a license tax, it fixes the amount and there is no assessment or any need of one, neither is there any necessity for notice or a hearing. But as said by Mr. Justice FIELD in Hagar v. Reclamation District, 111 U. S. 710: "Where a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, a different principle comes in. The officers in estimating the value act judicially; and in most of the states provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law to hear complaints respecting the justice of the assessments. The law in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law." In this State merchandise is not listed for taxation as other personal property, but instead the merchant must apply for a license to trade as such, and without which he subjects himself to a forfeiture to be recovered by indictment. He must give bond conditioned for the payment of the tax. It is, however, provided that merchants shall pay an *ad valorem* tax equal to that which is levied upon real

estate, on the highest amount of goods, wares and mer-
chandise which they may have in their possession at
any time between the first Monday of March and the
first Monday of June in each year. It is this amount,
furnished by a sworn statement of the merchant, that
forms the basis upon which the various state, county,
school and municipal taxes are levied.

Prior to the Act of March 2, 1895, Laws 1895, page
223 et seq., there was no provision in the statutes of
this State for revising and increasing the estimate of
values placed by merchants and manufacturers upon
their stocks of goods. The valuations placed by them
on their goods upon their oaths were final, subject only
to the penalties of bond forfeiture and prosecution for
false swearing. No provision was made for equalizing
the value of the stocks of goods by a legally constituted
board of equalization, as was provided for equalizing
the assessments of other property. The Act of 1895
brought these statements for the first time under the
jurisdiction of the boards of equalization, and fixed the
fourth Monday in September in each year as the time
when merchants would be heard by said board to show
cause why increases should not be made in their valua-
tions. By express provision of statute, section 9130,
Revised Statutes 1899, the city of St. Louis was ex-
cepted out of this provision for a county board of
equalization, and by virtue of its special charter, which
went into effect on the 27th day of October, 1876, sec-
tion 24, article 5, which provided: "There shall be
a board of equalization, consisting of the president of
the board of assessors, who shall be president thereof,
and four discreet and experienced real estate owners
of the city of St. Louis, of a prior residence therein of
ten years, who shall be appointed by the judges of the
circuit court of the eighth judicial circuit, on the second
Monday of March annually. The duty of said board
shall be to adjust, correct and equalize the valuation of
real estate and personal property in said city. It shall

meet on the third Monday in March annually, and shall remain in session for four weeks, if business requires it, and no longer. Said board shall hear and determine all appeals in a summary manner, shall adjust and correct the assessment books accordingly; shall determine as far as possible whether the property has been assessed at the true cash value, and in just proportion to the assessed value of the other property in the city similarly situated, and to this end shall increase or diminish the assessment on any property, real or personal, or mixed. If they propose to increase the assessment in any case, they shall cause notice thereof to be served upon the owner, agent or representative thereof, if within the city, who shall have the right to be heard upon such proposed increase. . . . . The members of such board, before entering upon the duties of their office, shall take and subscribe an oath similar to that required of county boards of equalization.''

The provision of the charter was in full force and effect at the time of and long prior to the passage of the Act of 1895, providing for equalizing the values of merchants' stocks. At that time, also, there was another statutory enactment which provided (Sec. 9383): ''All services required to be performed by county officers under this article shall be performed by the corresponding officers of the city of St. Louis, and wherever the word 'county' occurs, the same shall be construed to apply to and include the city of St. Louis.'' The Board of Equalization of the city corresponds to the County Board of Equalization, and therefore the board created by section 24 of article 5 of the charter of St. Louis could and should have performed the duty of equalizing the values in merchants' statements just as the County Board of Equalization do in the various counties, but for the fact that the Legislature overlooked the provision in section 24 of article 5 of the charter that this City Board of Equalization was required to meet on the third Monday in

March annually and remain in session for four weeks, if business requires it, and *no longer*, whereas the general law of the State, as we have seen, requires the Boards of Equalization of the counties to meet on the first Monday in September of each year for the purpose of equalizing the valuation of merchants' statements. Inasmuch as the assessment and collection of the revenue for the State in St. Louis is a matter within the power of the Legislature, as well as in any and all other counties in the State, there was no reason why the General Assembly, by an appropriate provision in the Act of 1895, could not have required these merchants' statements to be equalized by the then and now Board of Equalization of the city of St. Louis and to that end required that board to meet in September for that purpose, but it did not do so, and it seems to be a clear case of *casus omissus* which this court cannot remedy, as it is clearly within the powers of the Legislature and not of the courts.

But the question presented by this record is not the power of the Board of Equalization of St. Louis to equalize the valuations of the merchants' statements, but whether the St. Louis Board of License Revision has the power to correct and equalize the valuation of such merchants' statements. We think not. At the time of the passage of the Act of 1895, which for the first time conferred that authority on the county boards of equalization, there was no Board of License Revision in St. Louis, and it was clearly not within the contemplation of the Legislature to confer that power upon a board not then in existence. It is insisted, however, by counsel for the License Collector, that for the reason that the Board of Equalization did not and could not meet in September and thus conform to the general laws of the State, the city had the power, under its charter right to create new offices and transfer the duties of one office to another, to create a new board to equalize, and if need be increase, the valuation placed

by a merchant on his stock, and the city by ordinance did so. The difficulty in reaching the conclusion to which the License Collector would go, it seems to us, is insurmountable. In the first place, a comparison of the powers granted this Board of License Revision with those conferred upon the Board of Equalization, satisfies us that it was not the intention of the Municipal Assembly to create a board of equalization with the powers claimed therefor in these actions. The large and controlling consideration in creating the Board of Equalization, was to have a body authorized to adjust, correct and equalize the valuation of real and personal property, whereas a careful attention to the ordinance creating the Board of License Revision will demonstrate that its purpose was to have a responsible body who would review, adjust and correct the lists of persons who were liable to pay license and occupation taxes. In the charter provision the Board of Equalization is given power to "determine as far as possible whether the *property* has been assessed at the true cash *value,* and in just proportion to the assessed *value* of the other property in the city similarly situated," whereas in the ordinance the Board of License Revision is given the power "to determine as far as possible whether all *persons* have been *listed* who are required to have a license or pay a license tax, and whether all *persons* have made correct returns where such returns are required by law or ordinance in connection with licenses and license taxes, and to this end *shall add or strike off names.*" In striking contrast with this last clause, is the power given to the Board of Equalization to "increase or diminish the *assessment* on any property, real or personal, or mixed."

But again, if the Board of Equalization proposes to increase a valuation, it is required to give notice thereof to the person affected, but no such provision is

made if this Board of Revision shall increase a merchant's valuation of his stock.

The only remaining clause in the ordinance from which it might be argued that it was meant to confer the power to equalize assessments of property, is found in section 2112, chapter 30, Revised Ordinances of St. Louis, 1907, in these words: "The majority of said board shall constitute a quorum and a majority shall determine all matters of appeal or of revision or correction of assessments." Obviously this clause was inserted by following too closely the language of section 24, article 5, of the charter, which furnished the form for this ordinance, but it cannot be construed as granting a new power not elsewhere found in the ordinance and we can only conclude the use of the word "assessment" in this connection was inadvertent as it could only have reference to the lists of persons who are to pay license taxes and this list this board can review and correct.

Our conclusion on this branch of the case is that this Board of License Revision was designed to perform a very important duty in securing to the city the revenue which it was entitled to take for occupation taxes and that its provisions are well designed for that purpose, but we do not think it was the purpose of the Municipal Assembly when they enacted this ordinance to transfer to this Board of License Revision any of the duties and powers conferred by the charter upon the Board of Equalization, but that this last named board was retained with all the powers conferred upon it by law when it was first provided for in the charter. Inasmuch as this Board of License Revision undertook to increase the valuation which had been returned by the relators to the collector under oath and as the collector demands the tax upon this increased valuation, it is too plain for argument that since such board had no power under the ordinance which created it to increase the valuation, the collector

had no right to demand a payment of taxes upon this increased valuation as a condition precedent to issuing their merchants' licenses for the year 1909 to the relator.

We have carefully considered the argument that the Legislature by the Act of 1895, obviously intended to pass a general law providing for the equalization of the valuations of merchants' statements, and that in justice and right it should apply to the city of St. Louis as well as to any other county in the State, but it is axiomatic in this State that the authority to tax a citizen must be found in the written laws and not left to a matter of inference or implication.

And as already said, we have been unable to find any statutory authority authorizing the Board of Equalization in the city of St. Louis to either increase or reduce the valuations placed by merchants in their sworn statements to the collector, and are convinced that it is simply a matter that was overlooked by the Legislature when it was enacting the law of 1895. We are clearly of the opinion that this failure of the Legislature to provide for the equalization of these merchants' valuations affords no authority for the action of the Revision Board to increase the said valuations. The matter is one that must be referred to the Legislature to correct.

This court in State ex rel. v. Cunningham, 153 Mo. 642, speaking of the omission in the statute relating to Boards of Equalization of the power to add property omitted from the taxpayers return, said: "By these [statutory provisions] we see that the law first appeals to the conscience of the property-owner to furnish an honest list and valuation of his property, then it imposes a severe penalty on him if he fails to do so, and authorizes and requires the assessor under a penalty to make the assessment under the best information he

can obtain. If these provisions of the statute are not sufficient to accomplish their purpose, it is for the Legislature and not for the courts to authorize some other method of obtaining a correct list of the taxable property in the county.''

It results, therefore, that the demurrers should be and are sustained, and the peremptory writs of mandamus shall issue directing the license collector to issue to the several relators their licenses in due form of law as prescribed in the statutes and ordinances of said city to sell goods, wares and merchandise, upon their payment to him of the taxes tendered by them upon the basis of their several sworn statements. *Valliant, C. J., Fox, Woodson* and *Graves, JJ.,* concur; *Burgess* and *Lamm, JJ.,* not sitting.